UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-8282 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| CHANNELADVISOR CORPORATION, | : **SECURITIES EXCHANGE ACT OF** |
| TIMOTHY BUCKLEY, DAVID SPITZ, | : **1934** |
| JOSEPH L. COWAN, JANET COWELL, | : |
| LINDA CRAWFORD, MARSHALL | : **JURY TRIAL DEMANDED** |
| HEINBERG, HIMANSHU PALSULE, | : |
| TIMOTHY WILLIAMS, and SCOT WINGO, | : |
| | : |
| Defendants. | : |
| | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against ChannelAdvisor Corporation ("ChannelAdvisor or the "Company") and the members ChannelAdvisor's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of ChannelAdvisor by affiliates of CommerceHub, Inc. ("CommerceHub").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on September 27, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the CH Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of CommerceHub, will merge with and into ChannelAdvisor with ChannelAdvisor surviving as a wholly owned subsidiary of CommerceHub (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on September 4, 2022 (the "Merger Agreement"), each ChannelAdvisor stockholder will receive $23.10 in cash (the "Merger Consideration") for each ChannelAdvisor share owned.

3. As discussed below, Defendants have asked ChannelAdvisor's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Robert W. Baird & Co. Incorporated ("Baird") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to ChannelAdvisor's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the proxy solicitor for the Company, MacKenzie Partners, Inc., is headquartered in this District, and the Company is traded on the New York Stock Exchange, also headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of ChannelAdvisor stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Timothy Buckley has served as a member of the Board since 2004 and is the Chairman of the Board.

11. Individual Defendant avid Spitz has served as a member of the Board since 2015 ad is the Company's Chief Executive Officer.

12. Individual Defendant Joseph L. Cowan has served as a member of the Board since 2016.

13. Individual Defendant Janet Cowell has served as a member of the Board since 2016.

14. Individual Defendant Linda Crawford has served as a member of the Board since 2021.

15. Individual Defendant Marshall Heinberg has served as a member of the Board since 2019.

16. Individual Defendant Himanshu Palsule has served as a member of the Board since 2021.

17. Individual Defendant Timothy Williams has served as a member of the Board since 2012.

18. Individual Defendant Scot Wingo has served as a member of the Board since 2001 and is the co-founder of the Company.

19. Defendant ChannelAdvisor is a Delaware corporation and maintains its principal offices at 3025 Carrington Mill Boulevard, Suite 500, Morrisville, NC 27560. The Company's stock trades on the New York Stock Exchange under the symbol "ECOM."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

A. **The Proposed Transaction**

22. ChannelAdvisor, together with its subsidiaries, provides software-as-a-service (SaaS) solutions in the United States and internationally. The Company's SaaS is a cloud platform that helps brands and retailers to improve their e-commerce operations, expand to new channels, and grow sales. Its suite of solutions includes various platform modules, including Marketplaces module that connects customers to third-party marketplaces, and allows brands and distributors to

4

manage purchase orders, shipment notifications, stock quantities, and invoices for multiple retail dropship partners; Digital Marketing module that creates, manages, and evaluates advertising using a variety of ad formats across multiple channels; Shoppable Media module that allows brands to provide web visitors to purchase using dynamic links to in-stock retail product pages or carts, or with information on where products can be purchased from local retail stores; and Brand Analytics module, which helps brands for e-commerce channels with actionable insights into how products are performing across thousands of retailer websites and marketplaces. Its customers include online businesses of brands and retailers, as well as advertising agencies that use its solutions on behalf of their clients. The Company was incorporated in 2001 and is headquartered in Morrisville, North Carolina.

23. On September 6, 2022, the Company and CommerceHub jointly announced the Proposed Transaction:

> LATHAM, N.Y. and RESEARCH TRIANGLE PARK, N.C., Sept. 6, 2022 /PRNewswire/ -- CommerceHub, an industry-leading commerce network connecting supply, demand and delivery for the world's leading retailers and brands, and ChannelAdvisor Corporation ( NYSE: ECOM), a leading provider of cloud-based e-commerce solutions that enable brands and retailers to increase global sales, today announced they have entered into a definitive agreement for CommerceHub to acquire the outstanding shares of ChannelAdvisor in a transaction led by global software investor and current shareholder of CommerceHub, Insight Partners. Under the terms of the agreement, ChannelAdvisor stockholders will receive $23.10 per share in cash, representing a premium of approximately 57% over the company's closing stock price on September 2, 2022, the last full trading day prior to this announcement. The boards of directors of both companies have unanimously approved the transaction.
>
> The complementary combination of CommerceHub and ChannelAdvisor expands capabilities for brands and retailers:
>
> - Brands will be able to manage their public and private marketplaces alongside their retailer connections with a single vendor, improving

  efficiency by unifying first-party, dropship, and third-party integrations.

- Retailers will be able to access an even larger pool of brands, with over 18,000 customers transacting more than $50 billion in gross merchandise value (GMV) and more than $500 million in digital marketing and retail media ad spend annually across the combined network.

- Companies across the network will be able to save on delivery costs and improve delivery experiences with Delivery Suite, and improve their consumer experience with Shoppable Media and Brand Analytics.

"CommerceHub and ChannelAdvisor have both established themselves as leading solutions for different segments of online retailers and brands. By coming together, we can provide an even broader network, enabling our combined customers to grow their businesses by discovering new products, new brands, and new channels," said Bryan Dove, CEO, CommerceHub.

"This is a tremendous opportunity for our customers, for our team members and our shareholders. This transaction positions the combined company to accelerate innovation and help shape the future of commerce," said David Spitz, CEO, ChannelAdvisor.

Investors that participated in this transaction include Insight Partners, GTCR, Sycamore Partners, and Goldman Sachs Asset Management. Financing for the transaction is being provided by Sixth Street and Golub Capital LLC (the "Financing Sources").

The proposed transaction is not subject to a financing condition and is expected to close in 2022.  The transaction is subject to customary closing conditions, including receipt of regulatory approvals and approval by ChannelAdvisor's stockholders. The companies will operate independently until the proposed transaction is finalized.

Upon completion of the transaction, ChannelAdvisor will become a privately held company and shares of ChannelAdvisor common stock will no longer be listed on any public market.

**Advisors**

Baird is serving as financial advisor to ChannelAdvisor and Cooley LLP is acting as legal counsel to ChannelAdvisor.

Stifel and District Capital Partners are serving as financial advisors to CommerceHub. Willkie Farr & Gallagher LLP is acting as legal

>advisor to CommerceHub and Paul, Weiss, Rifkind, Wharton & Garrison LLP are acting as debt financing legal advisor to CommerceHub. Kirkland & Ellis LLP served as legal advisor to GTCR and Sycamore Partners and Simpson Thacher & Barlett LLP served as legal advisor to Goldman Sachs Asset Management.
>
>Latham & Watkins LLP are acting as legal advisors to the Financing Sources.

\* \* \*

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that ChannelAdvisor's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

25. On September 27, 2022, ChannelAdvisor filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by ChannelAdvisor management and relied upon by Baird in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are

materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Baird with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that ChannelAdvisor management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Levered Free Cash Flow and Unlevered Free Cash Flow, but fails to provide line items used to calculate the metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31. With respect to Baird's *Selected Public Company Analysis*, the Proxy Statement fails to disclose the financial metrics of each company selected by Baird for the analysis.

32. With respect to Baird's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

33. With respect to Baird's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value for ChannelAdvisor; (ii) the inputs and assumptions underlying the use of Adjusted EBITDA multiples ranging from 11.0x to 16.0x; (iii) the inputs and assumptions underlying the use of the illustrative discount rates of 11.0% to 14.0%; (iv) the amount

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

of ChannelAdvisor's net cash position as of June 30, 2022; and (v) the number of fully diluted outstanding shares of ChannelAdvisor.

34. With respect to Baird's *Transaction Premiums Analysis*, the Proxy Statement fails to disclose: (i) the transactions reviewed and analyzed by Baird; and (ii) the premia paid in those selected transactions.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and

10

authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of ChannelAdvisor within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of ChannelAdvisor, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of ChannelAdvisor, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of ChannelAdvisor, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 28, 2022

**MELWANI & CHAN LLP**

By: /s/ *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*